## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ELI SALAZAR, and SUZETTE GARLEY SALAZAR,
individually and as parents and next friends of
SHANNON SALAZAR and SERENA SALAZAR, minors,
and GERALD GARLEY,

       Plaintiffs,

vs.                                        No. CIV 10-0118 JB/RLP

GEICO INSURANCE COMPANY,
a foreign corporation doing business in the
State of New Mexico,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Remand, filed February 23, 2010 (Doc. 10). The Court held a hearing on April 23, 2010. The primary issue is whether Defendant GEICO Insurance Company ("GEICO") has established subject-matter jurisdiction by showing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00. Because GEICO has presented sufficient evidence that Plaintiffs Eli Salazar, Suzette Garley Salazar, and Gerald Garley could recover up to $75,000.00 under their under-insured motorists insurance policy, and may be entitled to attorney's fees on top of that benefit award, the Court finds that GEICO has established that the Court has subject-matter jurisdiction over this case and therefore will deny the Plaintiffs' motion to remand.

### FACTUAL BACKGROUND

The Plaintiffs' suit arises from a vehicular accident in Taos, New Mexico on December 9, 2005. See Complaint to Recover Damages for Personal Injury, Injury Under the

Uninsured/Under-insured Motorist Policy ¶ 9, at 4, filed in the United States District Court on February 10, 2010 (Doc. 2-1).  Plaintiff Eli Salazar was driving Plaintiff Gerald Garley's vehicle on Paseo Del Pueblo Sur when Mariah-Boyd Martinez'[1] vehicle crashed into it.  See id. ¶ 9, at 4. Garley has uninsured/under-insured motorist coverage through GEICO, which provides coverage where the responsible party does not have sufficient insurance.  See id. ¶ 6, at 4.

## PROCEDURAL BACKGROUND

E. Salazar and Plaintiff Suzette Garley Salazar, individually and as parents and next friends of Shannon Salazar and Serena Salazar, minors, and Garley filed their Complaint to Recover Damages for Personal Injury, Injury Under the Uninsured/Under-insured Motorist Policy against GEICO on December 1, 2009 in the Thirteenth Judicial District Court, County of Valencia, State of New Mexico.  See Complaint at 3 (Doc. 2-1).  The Complaint contains one Count for Damages for Uninsured/Under-Insured Motorists Benefits.  See id. ¶¶ 11-13, at 5.  The Plaintiffs contend that GEICO is contractually liable to the Plaintiffs for negligence and damages beyond Martinez' limit of liability, and allege that "as a direct and proximate result of Defendant's negligence," the Plaintiffs have suffered and continue to suffer personal injuries, have endured and continue to endure pain and suffering, and have incurred and continue to incur medical expenses.  See id. ¶ 13, at 5.  The claim for relief is for "an amount reasonable to compensate them for all the foregoing damage, costs, and injuries, plus interest and prejudgment interest and the costs of this action and for such other further relief as the Court may deem proper."  Id. at 5.  The Plaintiffs have not alleged a claim of bad faith against GEICO.  See Transcript of Hearing at 10:16-20 (taken April 23, 2010)

---

[1] The Complaint refers to Martinez as "Defendant Mariah-Boyd Martinez"; however, she is not a named defendant in the Complaint.  Complaint ¶¶ 6, 9, at 4.

("Tr.")(Court, Hire).[2]

GEICO filed a notice of removal on February 10, 2010.  See Notice of Removal, filed February 10, 2010 (Doc. 2).  GEICO based its removal on 28 U.S.C. § 1332, which provides for federal jurisdiction based on diversity of citizenship and a specified amount in controversy.[3]  GEICO represents that the Plaintiffs are citizens of New Mexico and that GEICO is a Maryland corporation, with its principal place of business in Maryland.  See Notice of Removal ¶¶ 7-9, at 2.  GEICO also represents that the amount in controversy exceeds the sum of value of $75,000.00, exclusive of interest and costs, because the Plaintiffs have claimed an entitlement to benefits under the subject policy where the occurrence policy limits are the amount of $100,000.00.  See Notice of Removal ¶ 5, at 2.

On February 23, 2010, the Plaintiffs filed a motion to remand, arguing that the Court does not have jurisdiction because the Plaintiffs did not allege an amount in controversy in their Complaint and because GEICO has failed to prove that the amount in controversy is in excess of $75,000.00.  The Plaintiffs state that, in assessing the amount in controversy, a plaintiff's settlement demand is relevant and argue that the Plaintiffs have never alleged an amount in controversy in settlement demands.  See Motion ¶¶ 6-7, at 2.  The Plaintiffs argue that, because GEICO's claim adjuster offered as settlement $1,500.00 to Suzette Salazar, $1,600.00 to E. Salazar, $100.00 to Shannon Salazar, and nothing to Serena Salazar, the amount in controversy could not possibly be over $75,000.00.  See Motion ¶ 8, at 2.  In response to the Plaintiffs' motion to remand, GEICO

---

[2] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[3] 28 U.S.C. §1332 also addresses costs.  See 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs . . . .").

argues that its claim adjuster's offer of settlement is irrelevant to the amount in controversy, because only a plaintiff's offer of settlement reflects a reasonable estimate of a plaintiff's claim.  GEICO argues that the Plaintiffs have confused the important distinction between a defendant's offer of settlement and a plaintiff's offer of settlement, and the Plaintiffs have not offered any case law finding that a defendant's settlement offer is relevant evidence of the amount in controversy. <u>See</u> Response in Opposition to Motion to Remand at 1-2, filed March 8, 2010 (Doc. 11).  GEICO also argues that the Plaintiffs did not establish in their motion to remand that their damages are $75,000.00 or less, and contends that GEICO met its burden of establishing the amount in controversy is in excess of $75,000.00 in its notice of removal when it stated that the limit of the policy under which the Plaintiffs are seeking contractual liability is $100,000.00. <u>See</u> Response at 2.

At the hearing, Warren F. Hire, the Plaintiffs' attorney, argued that the combination of the dollar amounts that GEICO's claim adjuster offered the Plaintiffs does not add up to $75,000.00. <u>See</u> Tr. at 2:20-3:5 (Hire).  Mr. Hire argued that the Plaintiffs have not made a demand, but stated that he has presented medical information to GEICO that Suzette Salazar may need surgery on her shoulder, although he has no further details, because his clients have not returned his telephone calls. <u>See</u> Tr. at 4:21-5:3 (Hire).  Mr. Hire represented to the Court that he has no estimate of how much that surgery would cost.  <u>See</u> Tr. at 5:12-14 (Court, Hire).  David W. Frizzell, GEICO's attorney, argued that, while GEICO plans to vigorously defend its case, the lack of certainty as to the value of the Plaintiffs' case, especially in light of the information that a surgical procedure is on the horizon, suggests that the value of the Plaintiffs' case is high.  <u>See</u> Tr. at 5:23-6 (Frizzell). Mr. Frizzell also explained that GEICO took account of the background facts in the Complaint, as well as other information, to assess the value of the case, including that the Plaintiffs were able to recover money up to the policy limit of Martinez' insurance policy -- $25,000.00 -- which indicated

to Mr. Frizzell that there must have been a significant injury.  See Tr. at 6:6-9 (Frizzell).
Mr. Frizzell explained that, until the Plaintiffs indicate otherwise, the background facts give GEICO
sufficient reasons to believe that the value of the Plaintiffs' claim will reach the upper limit of their
policy -- $100,000.00.  See Tr. at 7:15-23 (Frizzell).  Mr. Frizzell conceded that, if the Plaintiffs
were to put something into writing that they are not seeking anything that exceeds $75,000.00, the
Court would lose jurisdiction, and Mr. Frizzell noted that, in his experience, it is relatively common
for a plaintiff's attorney to contact him and state that the plaintiff is not seeking over $75,000.00,
but that Mr. Hire has not made such a representation in this case.  See Tr. at 7:24-8 (Court, Frizzell).

In reply, Mr. Hire represented to the Court that there is a set-off provision in the Plaintiffs'
insurance plan, and that the $25,000.00 the Plaintiffs received from Martinez' insurance policy will
offset the maximum amount the Plaintiffs can recover from GEICO down to $75,000.00.  See Tr.
at 8:18-9:1 (Hire).[4]  Mr. Frizzell conceded that he was mistaken, and that, taking the set-off
provision into account, the contract will provide for up to $75,000.00.  See Tr. at 9:16-17 (Frizzell).
Mr. Frizzell noted, however, that Section 39 of the New Mexico Code provides for the prevailing
party to receive attorney's fees, and because it is a statutory provision, it can be taken into account
in assessing whether the Plaintiffs' claim exceeds $75,000.00.  See Tr. at 9:25-10:15 (Frizzell).
Mr. Hire suggested that the attorney's fees should not be taken into account in assessing the amount
in controversy.  See 11:16-20 (Hire).  Both parties thus agreed that the issue for the Court is whether
a claim for a maximum recovery of $75,000.00, plus attorney's fees, bestows jurisdiction

---

[4] The parties agreed that, under New Mexico law, even though the Plaintiffs have received
some money from Martinez and her insurance company, the Plaintiffs may still recover from their
own insurance policy's uninsured/under-insured motorists coverage.  See Tr. at 7:13-23
("THE COURT: And so the [Plaintiffs' insurer] can be sued under New Mexico law for above the
[tortfeasor's] policy limits? MR. FRIZZELL: Absolutely, Your Honor.").

on the Court.

**LAW REGARDING DIVERSITY JURISDICTION AND THE
AMOUNT IN CONTROVERSY**

Subject-matter jurisdiction under 28 U.S.C. § 1332(a) requires, in addition to diversity of citizenship, that "the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).[5]  The United States Court of Appeals for the Tenth Circuit has noted that "[d]eterminations of sufficiency of the amount in controversy are governed by an odd set of rules." McPhail v. Deere & Co., 529 F.3d 947, 952 (10th Cir. 2008).  The Tenth Circuit, in McPhail v. Deere & Co. explained:

> [I]f the in-state plaintiff wishes to remain in state court, all it needs to do is to refrain from alleging any particular sum in its prayer for relief (assuming that is permitted, as it often is, under state rules of civil procedure), and, according to this and most other courts, the defendant is required to prove jurisdictional facts by a "preponderance of the evidence" such that the amount in controversy may exceed $ 75,000. Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001). Thus, when the proponent of federal jurisdiction is the party that does not need it, mere allegations suffice; but when the proponent of federal jurisdiction is the party in whose interest diversity jurisdiction was created, actual proof of jurisdictional facts is required, at a stage in the litigation when little actual evidence is yet available. This set of rules bears no evident logical relation either to the purpose of

---

[5] 28 U.S.C. § 1332(a) provides:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between--

   (1) Citizens of different States;

   (2) citizens of a State and citizens or subjects of a foreign state;

   (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

   (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

-6-

diversity jurisdiction, or to the principle that those who seek to invoke federal jurisdiction must establish its prerequisites.

McPhail v. Deere & Co., 529 F.3d at 953 (citation omitted).

## 1.     Establishing Amount in Controversy When the Complaint is Silent.

"[A] plaintiff cannot avoid removal merely by declining to allege the jurisdictional amount [in controversy]." Id. at 955.  In the absence of an explicit demand for more than $ 75,000.00, the defendant must show how much is in controversy through other means.  See id. at 955. The Tenth Circuit explained that "the defendant must affirmatively establish jurisdiction by proving jurisdictional facts that ma[ke] it possible that $75,000 [is] in play." Id.  The Tenth Circuit has identified the means upon which the defendant may rely to show how much is in controversy: (i) the defendant may rely on an estimate of the potential damages from the allegations in the complaint[6]; (ii) the defendant may rely on other documentation to provide a basis for determining the amount in controversy, such as interrogatories obtained in the state court before removal, affidavits, or other evidence submitted in federal court afterward[7]; and (iii) the defendant may rely on the plaintiff's proposed settlement amount if it appears to reflect a reasonable estimate of the plaintiff's claim, because the plaintiff's own estimation of its claim is a proper means of supporting the allegations in the notice of removal.  See 529 F.3d at 956.  In McPhail v. Deere & Co., the Tenth Circuit found

---

[6] In Luckett v. Delta Airlines, Inc., 171 F.3d 295 (5th Cir. 1999), the United States Court of Appeals for the Fifth Circuit upheld removal based on a complaint seeking recovery in tort for "alleged damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization," but which did not specify a numerical value of the damage claim.  171 F.3d at 298.

[7] The Tenth Circuit gives the example of a case in which a defendant has allegedly breached a contract and the plaintiff seeks damages in an indeterminate amount.  The Tenth Circuit suggests that "a defendant might support jurisdiction by attaching a copy of the contract, valued at more than $75,000, to the notice of removal."  McPhail v. Deere & Co., 529 F.3d at 956.

that the defendant met its burden to support diversity jurisdiction where the plaintiff's complaint was silent on the amount in controversy. In its notice of removal, the defendant represented that the amount in controversy exceeded $75,000.00, and incorporated electronic-mail messages and letters of conversations between the parties' attorneys discussing the value of the claim. The defendant's counsel interpreted the conversation as meaning that the plaintiff was seeking more than $75,000.00, but the plaintiff's counsel refused to concede an amount in controversy in excess of $75,000.00, stating "it may very well be" that the amount in controversy would exceed $75,000.00. 529 F.3d at 957. The Tenth Circuit found that the background information provided enough supplementary information for the district court to conclude that it was not legally certain that the plaintiff would recover an amount less than $75,000.00. See id. at 957.

In Laughlin v. K-Mart Corp., 50 F.3d 871 (10th Cir. 1995), the Tenth Circuit held that, where a state-court complaint does not identify a specific amount that the plaintiff seeks to recover, the burden is on a defendant seeking removal to demonstrate that this jurisdictional prerequisite is satisfied by "affirmatively establish[ing]" in the notice of removal that the amount in controversy exceeds the statutory requirement. 50 F.3d at 873. In that case, the plaintiff alleged wrongful constructive discharge and sought damages in excess of $10,000.00. See id. at 872. The defendant attached the complaint to its notice of removal, but failed to suggest any potential value of the claims in the complaint. See id. at 873. Thus, the Tenth Circuit was presented with a complaint and a notice of removal that both referred only to damages in excess of $10,000.00, and found the reference insufficient to satisfy the amount-in-controversy requirement See id. at 874.

In Martin v. Franklin Capital Corp., 251 F.3d 1284 (10th Cir. 2001), the defendant's notice of removal totaled up all of the dollar figures in the plaintiff's complaint, but some of the dollar amounts were considered background information that were not linked to the plaintiff's attempts to

recover damages.  Because the Tenth Circuit found that the defendant's notice of removal depended on an erroneous "construction of the [plaintiff's] pleading," the Tenth Circuit held that the amount-in-controversy requirement was not met.  See 251 F.3d at 1291.

In Meridian Security Insurance Co. v. Sadowski, 441 F.3d 536 (7th Cir. 2006) (Easterbrook, J.), the Seventh Circuit explained how a removing defendant asserting diversity jurisdiction in the face of a silent complaint might proceed:

> [T]he removing defendant, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover. We have suggested several ways in which this may be done -- by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.  The list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint (what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant).  Once the estimate has been made -- and contested factual allegations that support the estimate have been established in a hearing under Rule 12(b)(1) by admissible evidence . . . -- then . . . the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum.

441 F.3d at 541-42 (citations omitted).  The Tenth Circuit in McPhail v. Deere & Co. adopted the reasoning of the Seventh Circuit, stating:

> Meridian eliminates the double standard that would come from misunderstanding what "preponderance of the evidence" requires.  The proponent of federal jurisdiction must prove contested facts; and because a defendant has no control over the complaint, he cannot put a large sum of money in controversy simply by demanding it, as a plaintiff often can.  But once those underlying facts are proven, a defendant (like a plaintiff) is entitled to stay in federal court unless it is "legally certain" that less than $ 75,000 is at stake.  If the amount is uncertain then there is potential controversy, which is to say that at least $ 75,000 is in controversy in the case.  Although this Court's opinions have not been entirely clear on this issue, the approach we adopt today is consistent with their holdings and analysis.

McPhail v. Deere & Co., 529 F.3d at 954.

2.      **Amount in Controversy in Insurance Cases.**

The Tenth Circuit has addressed how the amount in controversy may be established in automobile-insurance cases.  In <u>Farmers Ins. Co. v. McClain</u>, 603 F.2d 821 (10th Cir. 1979), the insurance company sought a declaratory judgment that it had no liability under the policy of insurance it had issued to the owner of a vehicle involved in an accident.  The complaint stated that the matter in controversy exceeded the amount-in-controversy limit in 28 U.S.C. § 133, exclusive of interest and costs.  <u>See</u> 603 F.2d at 822.[8]  The Tenth Circuit found:

> Where an insurer denies his obligation under a liability insurance policy on the theory either that the accident was not within the coverage of the policy or that such policy was void, the amount in controversy is measured by the injured third party's bona fide claim against the insured, unless this exceeds the maximum limit of the policy, in which event the amount in controversy is the maximum limit of the insurer's liability under the policy.

603 F.2d at 823 (citing 6A <u>Moore's Federal Practice</u> § 57.23, at 244-45 (2d ed. 1974)).  Similarly, in <u>State Farm Mut. Auto. Ins. Co. v. Narvaez</u>, 149 F.3d 1269 (10th Cir. 1998), State Farm Insurance filed an action for a declaratory judgment that the defendant's uninsured motorist benefits did not cover his injuries.  Neither party challenged jurisdiction, but the Tenth Circuit found that the dispute between State Farm Insurance and the defendant based solely on his $50,000.00 uninsured motorist policy was inadequate to confer subject-matter jurisdiction, and thus remanded the case to the district court to be dismissed for lack of subject-matter jurisdiction, without reaching the merits of the defendant's appeal.  <u>See</u> 149 F.3d at 1271.[9]  The Tenth Circuit did not address attorney's fees

---

[8] At the time, 28 U.S.C. § 1332 provided that "United States District Courts shall have original jurisdiction of all civil actions between citizens of different states where the matter in controversy exceeds the sum or value of $ 10,000, exclusive of interest or costs . . . ."  <u>Farmers Ins. Co. v. McClain</u>, 603 F.2d at 823.

[9] When the action in <u>State Farm Mut. Auto. Ins. Co. v. Narvaez</u> was filed, 28 U.S.C. § 1332 provided for diversity jurisdiction "where the matter in controversy exceeds the sum or value of

in either case.[10]

### 3.     Amount in Controversy and Attorney's Fees.

"The Supreme Court has long held that when a statute permits recovery of attorney's fees, a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship."  Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1340 (10th Cir. 1998)(citing Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933)). In Miera v. Dairyland Ins. Co, the plaintiff maintained that the district court erred in denying her motion to remand, insisting that the total damages sought in her underlying complaint could not exceed $41,028.51.  See 143 F.3d at 1339.[11]  She contended that the figure already contained an award of attorney's fees under NMSA 1978, § 59A-16-30 and NMSA 1978, § 57-12-10, and thus argued that the district court's speculation that an award of attorney's fees would increase the total to meet the $ 50,000.00 jurisdictional amount was unfounded.  See 143 F.3d at 1339.  The plaintiff's claim sought

> triple damages calculated at present to be $41,028.51, attorneys fees, pre-judgment interest at the maximum allowable rate of fifteen percent form [sic] the date of the breach of the defendant's obligations to the plaintiff, post-judgment interest, costs, the expenses in bringing this action and for such further relief as the court deems

---

$50,000, exclusive of interest and costs." 28 U.S.C. § 1332(a) (1994).

[10] Although GEICO cites to both of these cases in its brief, the Court notes that these cases present a different situation than the matter before the Court.  In these cases, the insurance company brought an action for declaratory judgment, and thus the state statute applicable in this case providing for the insured's attorney's fees was not a consideration when the Tenth Circuit stated that, "[w]here insurance coverage is denied, the maximum 'amount in controversy is the maximum limit of the insurer's liability under the policy.'"  State Farm Mut. Auto. Ins. Co. v. Narvaez, 149 F.3d at 1271 (quoting Farmers Ins. Co. v. McClain, 603 F.2d at 823).

[11] The amount in controversy requirement necessary in Miera v. Dairyland Ins. Co. was $50,000.00.  Congress increased the requirement in 28 U.S.C. § 1332 to $75,000.00 in 1996. See Pub. L. 104-317 (1996).

-11-

just, proper and necessary.

143 F.3d at 1340.  In her complaint, the plaintiff alleged that she had incurred "attorneys' fees in the amount of $6,854.00 to date to prosecute her uninsured motorist claim against the Defendant."  143 F.3d at 1340.  The Tenth Circuit noted that those fees, together with the plaintiff's claim for $41,028.51 treble damages, amounted to $47,882.51, $2,117.50 short of the $50,000.00 jurisdictional threshold.  See id.  The Tenth Circuit found, however, that:

> Considering the realities of modern law practice and the complexities of this case, we cannot say that, viewed as of the date of removal, it would be unreasonable to expect plaintiff to incur an additional $ 2,117.50 in attorney's fees.  The court therefore agrees with the district court that a reasonable attorney's fee alone, when added to the $ 41,028.51, would push the amount of plaintiff's claim in Count III above $ 50,000, without consideration of the pre-judgment interest or other costs and expenses sought.

143 F.3d at 1340.

> The law is now quite settled, as the many illustrative cases . . . indicate, that the amount expended for attorney's fees are a part of the matter in controversy for subject matter jurisdiction purposes when they are provided for by contract or by state statute; but only a reasonable attorney's fee may be included in measuring the amount in controversy.

14AA C. Wright & A. Miller, Fed. Prac. & Proc. Juris. § 3712, at 289-91 (2009).

## NEW MEXICO LAW REGARDING ATTORNEY'S FEES IN INSURANCE CASES

Section 39-2-1 of the New Mexico Statutes Annotated provides:

> In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim.

NMSA 1978, § 39-2-1 (2009).  The Tenth Circuit has found that an award of attorney's fees under § 39-2-1 must be predicated on a finding of "unreasonableness" on the part of the insurance company.  Sipp v. Unumprovident Corp., 107 Fed. Appx. 867, 878-79 (10th Cir. 2004)(remanding

-12-

to the district court so it could make specific findings as to the reasonableness or unreasonableness

of the insurance company's actions and to consider the availability of attorney's fees). "An insurer

is not liable for the statutory penalty when there is some reasonable ground, whether based on law

or fact, for refusing to make payment." United Nuclear Corp. v. Allendale Mut. Ins. Co., 103 N.M.

480, 496, 709 P.2d 649, 665 (1985). The Supreme Court of New Mexico, in Jackson National Life

Insurance Co. v. Receconi, 113 N.M. 403, 827 P.2d 118 (1992), explained that:

> [T]here is a significant difference between an insurer's conduct that will support a
> punitive damage award -- a frivolous or unfounded refusal to pay -- and the conduct
> that will justify an attorney's fee award under Section 39-2-1 -- an "unreasonable"
> denial of a claim, looking at the insurer's conduct from an objective standpoint and
> measuring it against a "reasonably prudent insurer" standard.

113 N.M. at 420, 827 P.2d at 135. See Valley Improvement Ass'n v. U.S. Fid. & Guar. Corp.,

129 F.3d 1108, 1123 (10th Cir. 1997)("We believe that the question of whether the defendant insurer

acted reasonably or unreasonably, within the meaning of the New Mexico statute authorizing the

award of attorneys' fees, was properly treated by the district court as an issue of fact.")

(citing Jackson Nat'l Life Ins. Co. v. Receconi, 113 N.M. at 420, 827 P.2d at 135). The Supreme

Court of New Mexico defines "bad faith" as "any frivolous or unfounded refusal to pay," and has

explained that "unfounded" in the context of insurance cases "means essentially the same thing as

'reckless disregard,' in which the insurer 'utterly fail[s] to exercise care for the interests of the

insured in denying or delaying payment on an insurance policy.'" Jackson National Life Insurance

Co. v. Receconi, 113 N.M. at 419, 827 P.2d at 134 (quoting Jessen v. National Excess Ins. Co., 108

N.M. 625, 628, 776 P.2d 1244, 1247 (1989)). Thus, New Mexico requires a higher burden of

demonstrating recklessness for awarding punitive damages, and a lower burden of demonstrating

reasonableness, which looks similar to a standard of negligence, for awarding attorney's fees. See

Stock v. ADCO Gen. Corp., 96 N.M. 544, 547, 632 P.2d 1182, 1185 (1981)(finding the plaintiff's

automobile insurance company liable to the plaintiff based on the insurance company's negligence and awarding attorney's fees under § 39-2-1 because the insurance company's conduct was unreasonable).  The Supreme Court of New Mexico also noted in <u>Jackson National Life Insurance Co. v. Receconi</u> that "there is a presumption in favor of an award of attorney's fees (as there is in favor of awarding costs to the prevailing party), so that attorney's fees under [§ 39-2-1] should ordinarily be awarded in the absence of a good reason for not doing so."  113 N.M. at 421 n.16, 827 P.2d at 136 n.16.  In contrast, there is no presumption of bad faith.

The purpose of § 39-2-1 is "to encourage insurers to pay out injury or damage claims promptly without placing on their insureds the unreasonable burden of having to bring a lawsuit to collect what they are entitled to under the policy in order to make themselves whole."  <u>Amica Mut. Ins. Co. v. Maloney</u>, 120 N.M. 523, 531, 903 P.2d 834, 842 (1995).  The Supreme Court of New Mexico in <u>Amica Mutual Insurance Co. v. Maloney</u> explained:

> [T]he provision is not aimed at holding out the threat of an award of attorney's fees any time an insurer challenges any issue.  The statute is simply designed to encourage insurers to resolve any doubt in favor of the insured and to pay off the claim quickly in order to make the insured whole after a loss.  Section 39-2-1 accomplishes this goal by punishing an insurer's unwarranted recalcitrance in paying a claim by awarding attorney's fees to the insured for his or her efforts in collecting benefits.

120 N.M. at 531, 903 P.2d at 842.

## ANALYSIS

The Plaintiffs maintain that the Court does not have jurisdiction over this matter because GEICO has not met its burden to show that the amount in controversy exceeds $75,000.00 and, therefore, that the Court must remand this case to state court.  GEICO argues that it has met its burden to show, by a preponderance of the evidence, that the value of the case, including attorneys fees, is in excess of $75,000.00.  The Plaintiffs have asserted an entitlement to benefits under their

uninsured/under-insured motorist coverage, which provides for coverage up to $100,000.00.

At the hearing, Mr. Hire made the representation that the tortfeasor and/or her insurance have paid the Plaintiffs the maximum liability amount under her insurance -- $25,000.00.  Under New Mexico law, "an insured is entitled to underinsurance benefits to the extent that his uninsured/underinsured coverage exceeds the tortfeasor's liability insurance."  Schmick v. State Farm Mut. Auto. Ins. Co., 103 N.M. 216, 219, 704 F.2d 1092, 1095 (1985).  The parties agree that, because the Plaintiffs have already received $25,000.00, the $100,000.00 limit of coverage is offset by the amount the tortfeasor paid, and thus the maximum amount the Plaintiffs can recover in this case, under GEICO's under-insured motorist coverage, is $75,000.00.  See Tr. at 8:18-9:1 (Hire); id. at 10:21-11:6 (Court, Frizzell).  The Tenth Circuit has held that, when a complaint is silent on the amount in controversy, the defendant may meet its burden to support diversity jurisdiction using background information the defendant has received through the complaint or through other discovery.  See McPhail v. Deere & Co., 529 F.3d at 957 (finding that the background information provided in electronic-mail communication between the parties' counsel established enough supplementary information for the district court to conclude that it was not legally certain that the plaintiff would recover an amount less than $75,000.00 and thus provided the district court with jurisdiction).  Here, GEICO contends that it used the information provided from the Plaintiffs -- medical records and that the Plaintiffs received maximum recovery from the tortfeasor's insurance policy -- to make a reasonable estimate that the value of the Plaintiffs' claim could reach the limit of their GEICO policy.  The Court gave the Plaintiffs repeated opportunities at the hearing to disavow that they are seeking all of the $75,000.00 available under the GEICO policy, and the Plaintiffs repeatedly declined make such a statement.  See Tr. at 4:5-9 (Court, Hire) ("THE COURT: What are you asking for in this case? How much money do you want?

-15-

MR. HIRE: We have not made a demand, Your Honor, to GEICO insurance. We've presented the medicals and a lot of other things.").

> THE COURT: Are you prepared to file something in court saying that you will not ask for, accept, or demand an amount that exceeds $75,000.00, or are we talking about a case where the Plaintiffs at this point simply don't know what this case is worth or what they want?
>
> MR. HIRE: Well, as Mr. Frizzell has been advised, everyone has been advised, my client -- Ms. Salazar has discussed with us the possibility of needing surgery on her shoulder . . . .
>
> THE COURT: And you don't have any estimate as to how much that surgery would or could cost?
>
> MR. HIRE: I do not, Your Honor.

Tr. at 4:15-5:3 (Court, Hire).   The Court finds that GEICO has met its burden of proving by a preponderance of the evidence facts that support that the Plaintiffs' claim may reach the upper limit of their uninsured/under-insured motorists-policy benefits.  See Martin v. Franklin Capital Corp., 251 F.3d at 1290 (requiring that the defendant prove jurisdictional facts by a "preponderance of the evidence" such that the amount in controversy may exceed $ 75,000.00); McPhail v. Deere & Co., 529 F.3d at 954 ("But once those underlying facts are proven, a defendant (like a plaintiff) is entitled to stay in federal court unless it is 'legally certain' that less than $ 75,000 is at stake.  If the amount is uncertain then there is potential controversy, which is to say that at least $ 75,000 is in controversy in the case.").

    With the offset, the contractual benefits cap out at $75,000.00.  To establish diversity jurisdiction, however, 28 U.S.C. § 1332 requires that the amount in controversy be in excess of $75,000.00.  Mr. Hire, at the hearing, stated that the Plaintiffs have not asserted a bad faith claim against GEICO.  Under New Mexico law, "an insured has a cause of action against its insurer for bad faith for failing to settle where its insurer breaches an 'implied covenant of good faith and fair

dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract.'" City of Hobbs v. Hartford Fire Ins. Co., 162 F.3d 576, 582 (10th Cir. 1998)(quoting Dairyland Ins. Co. v. Herman, 124 N.M. 624, 628, 954 P.2d 56, 60 (1997)). The insured party may be entitled to punitive damages if the insurer acted in bad faith. See Paiz v. State Farm Fire & Casualty Co., 118 N.M. 203, 211, 880 P.2d 300, 308 (1994)(reversing a punitive damage award in a breach of contract case, "disavowing the proposition that in a contract case, including one involving an insurance contract, punitive damages may be predicated solely on gross negligence," and holding that, "in addition to, or in lieu of, such negligence there must be evidence of an evil motive or a culpable mental state."); United Nuclear Corp. v. Allendale Mut. Ins. Co., 103 N.M. at 485, 709 P.2d at 654 ("To assess punitive damages for breach of an insurance policy there must be evidence of bad faith or malice in the insurer's refusal to pay the claim."); City of Hobbs v. Nutmeg Ins. Co., Nos. 99-2308 and 99-2318, 2000 U.S. App. LEXIS 31144, at *9 (10th Cir. Nov. 30, 2000) (upholding the district court's reliance on the New Mexico Uniform Jury Instruction, stating: "If you find that plaintiff should recover compensatory damages for the bad faith actions of the insurance company, then you may award punitive damages."). Without a claim of bad faith, the Court concludes that the value of the Plaintiffs' claim does not include the possibility of an award of punitive damages.

GEICO argues that New Mexico law also provides the Plaintiffs with a claim for attorney's fees in insurance cases and that it is proper to take such fees into account when assessing the value of the amount in controversy. GEICO is correct. The law is settled that the amount expended for attorney's fees are a part of the matter in controversy for subject-matter-jurisdiction purposes when a contract or state statute provides for such fees. See Miera v. Dairyland Ins. Co., 143 F.3d at 1340 ("The Supreme Court has long held that when a statute permits recovery of attorney's fees, a

reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship."). The Plaintiffs' right to recover attorney's fees depends on state law. See Gobbo Farms & Orchards v. Poole Chem. Co., 81 F.3d 122, 123 (10th Cir. 1996). New Mexico law provides: "In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim." NMSA 1978, § 39-2-1.[12] If the Plaintiffs prevail, the Court will make findings whether GEICO's actions were reasonable, and if the Court finds that GEICO acted unreasonably, the Court may award attorney's fees to the Plaintiffs. See Sipp v. Unumprovident Corp., 107 Fed. Appx. at 879 (remanding to the district court for a determination of the reasonableness of the insurance company's actions, pursuant to NMSA 1978, § 39-2-1). The Supreme Court of New Mexico has stated that a finding of bad faith is different from a finding of unreasonableness sufficient to support an award of attorney's fees:

> [T]here is a significant difference between an insurer's conduct that will support a punitive damage award -- a frivolous or unfounded refusal to pay -- and the conduct that will justify an attorney's fee award under Section 39-2-1 -- an "unreasonable" denial of a claim, looking at the insurer's conduct from an objective standpoint and measuring it against a "reasonably prudent insurer" standard.

---

[12] Under § 39-2-1, in actions involving insurance claims, the term "first party coverage" applies to the underlying policy coverage. Amica Mut. Ins. Co. v. Maloney, 120 N.M. at 523, 903 P.2d at 834; City of Hobbs v. Nutmeg Ins. Co., 2000 U.S. App. LEXIS 31144, at *19 ("[I]f the insurer's performance of its duty to pay runs directly to the insured for indemnifying the insured's direct loss, then the insurance classification is called 'first-party insurance.' The insurance benefit (the policy's financial proceeds) is paid to the insured to rectify the insured's actual loss.")(citation omitted). Black's Law Dictionary defines "first-party insurance" as "a policy that applies to an insured or the insured's own property." Black's Law Dictionary 873 (9th ed. 2009). In this case, the Plaintiffs have first-party coverage, and thus § 39-2-1 applies to their claim. See Complaint ¶ 6, at 4 ("The uninsured/under-insured motorist coverage provided by Geico Insurance Company to Plaintiff Gerald Garley provides coverage where the responsible party did not have sufficient insurance.").

<u>Jackson Nat'l Life Ins. Co. v. Receconi</u>, 113 N.M. at 420, 827 P.2d at 135.  There is a possibility that the Plaintiffs may prevail on their claim against GEICO, and there is no evidence to foreclose the possibility that the Plaintiffs may also be able to establish that GEICO acted or is acting unreasonably in failing to pay their claim.  <u>See</u> <u>Davis v. Prudential Prop. & Cas. Ins. Co.</u>, No. 97-3355, 1998 U.S. App. LEXIS 9687, at **3-5 (10th Cir. May 12, 1998)(decided under Kansas law)(upholding the district court's award of attorney's fees to the plaintiff in an under-insured motorists benefits dispute, because a state statute provided for attorney's fees upon a showing of the insurance company's unreasonableness and because the district court properly found that the insurance company did not have a bona-fide reason for failing to pay benefits).  The Court finds that GEICO has met its burden to show by a preponderance of the evidence that the Plaintiffs' claims may exceed $75,000.00, when taking into account the Plaintiffs' potential entitlement to attorney's fees on top of the $75,000.00 in benefits under the insurance policy, and GEICO, therefore, has established that the Court has jurisdiction over this case.  The Court thus denies the Plaintiffs' motion to remand.

**IT IS ORDERED** that the Plaintiffs' Motion to Remand is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Warren F. Hire, II
Ronald Bell & Associates, P.C.
Albuquerque, New Mexico

*Attorneys for the Plaintiffs*

-19-

David W. Frizzell
Simone, Roberts & Weiss
Albuquerque, New Mexico

   *Attorneys for the Defendant*